Thank you. May it please the Court. I'm Robert Muse from the American Freedom Law Center, and it's my honor and privilege to represent the plaintiffs' appellants in this important First Amendment case, and I'd like to reserve three minutes of my time for rebuttal. And to begin, this case is not CMAQ. There's no evidence of vandalism or violence, no evidence of reduced ridership, nor any evidence of a substantial resource diversion with regard to my client's proposed advertisement. So even under CMAQ, granted, they upheld a restriction that was similar to the disruption restriction at issue in this case, facially, but as applied, the Court made it clear that it had enough definitive and objective standards so they can make an independent assessment. The bus folks think your ad is false and misleading. Right. And, Your Honor, with regard to the false and misleading standards, there's two problems with that. Number one, factually, yes. Here's my question. Okay. Sorry. Here's my question. Yes. Have you submitted, resubmitted an ad addressed to their concerns about false and misleading? There hasn't been any resubmission or anything, but I think on this record, that is just simply not true. Number one, the advertisement itself is not materially false, even if it proposed a commercial transaction so that we were dealing with commercial speech and false advertising in the commercial context. I guess I should preface my question by saying, assuming they are correct, that it's inaccurate in some respect, did you or your clients offer to correct that? For example, that the reward was being offered by, not by the FBI, but by the State Department. Well, the, and what we referred to there is that the advertisement itself includes the actual website that you would go to, which is the State Department. That's a yes or no question from Judge Hawkins, and I'd appreciate an answer as well. Did you resubmit an ad with different text or not? There was not a different ad with different text. Okay. So we're looking at this ad and making a judgment based on this ad. Do you, do you dispute that an ad that is false and misleading can be rejected? That isn't stated very well, but I guess in theory, is that an okay ground to have something rejected? For example, if you had an ad that said, the mayor takes bribes, and that's demonstrably false, do they have to accept an ad like that? Well, I think as a matter of law, having a false and misleading standing dealing with public issue or political speech is constitutionally suspect. And that's clear from the New York Times case. That's clear from Alvarez. That's clear from LeBron. This is what Judge Bork. Yes. Again, it's a yes or no question. Can they, can, in theory, an ad be rejected on the ground that it's false and misleading? In theory, if it's false and misleading and it's defamatory, yes, under defamation. But false and misleading dealing with pure political or public issue speech, the answer is no. Under New York Times, what Judge Bork said in the LeBron v. WMATA case. Even in a limited public forum? I think even in a limited public forum, because you still, you're still confined by the standards you establish. Meaning, in a limited public forum, and it's very interesting, because a limited public forum, you can make restrictions based on speaker identity and you can make categorical restrictions based on subject matter. But a categorical restriction is we would like to have truthful ads on our buses because we think that's a public service to have honest things on the side of our buses. Is that categorically improper? It's improper when you're dealing with a public issue. I think, for example, like the Arab-Israeli-Palestinian, you know, the Israeli-Palestinian advertisements, or even in the case with the terrorism advertisements, you know, the fact that our client wants to describe them as jihadis and they say, well, no, they're terrorists or maybe they're freedom fighters. You run a substantial risk when you're applying a misleading or false standard to public issue political speech and that's why the First Amendment does not permit that. Again, the New York Times and Alvarez make that very clear and Judge Bork made that very clear, and particularly in this context. And look at the ad. What is materially false about that advertisement? Contact the FBI. The FBI and the State Department work together on this. If somebody comes across one of these terrorists and has a brush with the terrorists, the first agency they're going to contact is the FBI. The Rewards for Justice Program, the FBI works with the State Department for that, and the ad actually includes the, as contact, the website for the Rewards for Justice Program. There is nothing, even under if it was a commercial ad, there's nothing materially false about that advertisement as a matter of fact. But the fact that it's political public issue speech, you have that additional problem, constitutional violation problem, of trying to be the arbiter of truth for the government in those ads, and New York Times says you can't do that. Well, some things are capable of, some things are, truth is in the eye of the beholder, as you pointed out, but there are some things that are demonstrably true or false. You know, how many applications for land use permits were made in the city last year. I mean, there are thousands of things that are capable of deciding whether they're true or false. And with respect to those kinds of things, I guess I don't understand why in a limited public forum, which is what CMAQ says we have, the government can't say we want factually based statements to be true on the sides of our buses. And again, Your Honor, when you're dealing with, and I'm referring to what the Supreme Court has said, and that's where the problem is. Has any of those holdings occurred in the context of a limited public forum and the decision whether that type of restriction is, quote-unquote, reasonable or not? Well, not per se, but I think if you look at Judge Bork's decision in WMATA, which was Judge Starr and Judge Scalia unanimous in there, he made the point that having that sort of a restriction on political speech, prior restraint on political speech, is unheard of, was his term, and deservedly so. And I think it should be unheard of and deservedly so in this context. Adding the word political, you sort of decided the case without, and my question really was about those things that are capable of factual determination, even if they're in a political context. For example, let's say there were five land use applications and the ad said, there were 5,000 applications, therefore we need to impeach the mayor or whatever it may be. The factual part of that that's demonstrably false is demonstrably false. And I guess I'm not sure that any of the cases has dealt with that. Yeah. And like you said, Your Honor, I think the LeBron case is the closest one on point because it's dealing with bus advertisements. And in this case, I would even refer back, what is demonstrably false about the advertisement? There is nothing that's materially demonstrably false about that advertisement. It says virtually the same thing as the State Department ad. In fact, one of the issues that they brought up is they were concerned that they might be too identical, so there might be some copyright issues. So our clients actually made modifications based on what King County was concerned that they might be too similar. And so they made modifications that state essentially the same message, that there is nothing demonstrably false about that. If you notified, if you found one of these terrorists, you identified one of these terrorists, you contacted the FBI, as what essentially this ad is saying, as opposed to contacting the State Department, you're going to be certainly led to the Rewards for Justice program. You're certainly going to have whatever awards might be available to you under that. That is, to say that that somehow was a basis for rejecting this I think is an absolute red herring. Suppose the, this is a hypothetical, suppose that the list of pictures by the time your client submitted their ad that the State Department had removed one of the individuals whose photographs appear in that sort of lineup. Could they reject your ad on that basis? Well, I think that would be, yeah, I would. When you hear a question from the bench and you can answer it with a yes or no, please do, and then give your explanation. So is the answer yes or no? The answer is no. They should not be able to reject it on that basis. And if one of the pictures in this string had not only not been a terrorist, but a previous winner of the Nobel Peace Prize, could they reject your ad? In the context of this ad, I would say no. Because, again, I think the overall thrust. That, in your mind, would not be false or misleading? Well, it's somewhat of an odd hypothetical, but if it's a, I would say in the context of political speech to say false or misleading, I'd say no, they can't, that's not a basis for doing that. So the ad you proposed, they absolutely had to reject, whether it was inaccurate, even by a smidgen or a lot. That's your position. And just so I'm clear, my position is, one, there's nothing materially false about our ad, and two, if it's a public issue, political speech ad, which this case was, this ad was, then truth and falsity is not a basis, aside from defamation, which we've seen truth and falsity is not a legitimate basis. Can we go back to my first question, which is, at some point, the other side, the bus folks, if I can call them that, said we think it's false and misleading, and they identified that, it said the State Department, it said the FBI, and it said the State Department, and it said up to $25 million, and they thought that was misleading because there were varying rewards, if you will, for each of the individuals. Did your client, yes or no, offer to alter the ad to address their concerns? No. Okay. And if you look at the other side, I think we understand completely why you didn't, but you didn't. We did not, and we did not because we do not believe, number one, that it's actually false to begin with, as a matter of fact. I got you. And compare it even to the ad that they accepted. They offered up to $25 million in rewards. There's only so much detail, obviously, you can put in an advertisement, and you put the website on there for rewards for justice. Those are not materially false representations by any stretch, and we don't think it's appropriate. Counsel, Judge Gould, if I could interject a question on a different issue. Because this is coming to us procedurally on denial of a request for injunction, I'd like you to at least briefly address why an injunction, a mandatory injunction should issue here, even assuming that your client's right and you have a likelihood of success on the First Amendment merits. And the question in my mind foremost is, you know, what is the damage to your client? Can't your client, while this case is pending, put up ads on billboards or other media if the bus company, if Metro doesn't permit it? Thank you, Your Honor. Obviously, in the First Amendment context of preliminary injunctions, the often dispositive factor is the substantial likelihood of success on the merits, and that's because the Supreme Court, particularly Elrod v. Burns and a whole line of cases, makes very clear that even the momentary loss of First Amendment freedoms is sufficient to cause irreparable harm for injunctive relief to follow. And so if you can establish that substantial likelihood of success, the public interest, it favors the public interest to protect core constitutional freedoms, and it's irreparable harm as a matter of law. So if we can establish that substantial likelihood of success as a matter of law, applying the principles in Winters for preliminary injunctive relief, an injunction should issue as a matter of law, Your Honor. Well, we've recently clarified, though, that the other winter factors still have to be met. Exactly. And we also have cases that say that mandatory injunctions, as distinct from those that merely maintain the status quo, are harder to get.  I understand, Your Honor. And the fact is, in the winter factors, because we're dealing with a First Amendment case, that's why those additional factors, particularly the balance of equities, the irreparable harm in the public interest, weigh heavily, heavily in favor. In fact, it's almost dispositive, the substantial likelihood of success in a First Amendment case like this that an injunction should issue. And I know I've already run into my rebuttal time. So if there's any additional questions. Judge Gould, do you have anything to add at this moment? Nothing here, no, thanks. Okay.  We'll hear from King County. May it please the Court. David Hackett, representing King County Metro Transit for the King County Prosecutor's Office. The First Amendment does allow the government to regulate bus ads when those regulations are reasonable and viewpoint neutral. And the case law recognizes that buses represent a special type of limited forum. They're a special type of forum because you have the captive audience problems that were recognized in layman and because you have the strong need to run a proprietary bus system. As with any business, you run a system that attracts customers, not sends them away. Let's suppose that, I'm sorry, you go ahead. No, I was going to say, but in general, you do allow public issue ads. You don't have to, but you do. That's correct. We allow them for the purpose of raising revenue for our bus system, and we are able to do that as long as the regulations are consistent with our needs. But if you didn't allow them at all, this would be easy. Yes. But you do allow them. And so in terms of the issues that were dealt with in CMAQ, leaving aside for a moment the question of false and misleading, it seems to me that the disruption or the proof of disruption is way less in this case. Certainly CMAQ is the extreme case where you have actual safety concerns for the bus. In this situation, we're talking about interference with the system's need to be able to attract riders and to maintain a safe, efficient, and pleasant environment. But it's pretty speculative. I think that the reasonableness standard that applies to a limited public forum allows that type of discretion. It allows that type of lenient inquiry. And the reason is that absent giving some discretion to the bus folks, as Your Honor says, we will not be able to accept these types of ads. You will have less speech, not more. And that's the controlling principle from both Cogswell in this court and from Forbes. But that might not be a bad result. It would be a bad result. And the U.S. Supreme Court directs that it is a bad result, as does Cogswell says that it is a bad result to go down that road. Limited public forums are a special type of First Amendment forum where it's recognized that the government has important needs, and in this case to operate that proprietary system, to operate a business where people want to ride your buses, and also to protect the interests of a captive audience, which are the customers on that bus. Unlike someone through a courthouse, they can't avert their eyes. I have a couple of questions. This first one is a hypothetical, obviously. Let's suppose that Nordstrom's wanted to put an ad on your bus that said, spring sale discounts up to 25%, and it showed four garment items on the side of the bus, and in fact not every one of those was eligible for a 25% discount. Some were 5%, some were 10%, some were 15%. Would that be a factually false and misleading advertisement? No, it wouldn't. That would actually reflect the initial State Department ad where it said, up to $25 million reward. That's all it said. AFDI then changed the language of that ad, and their altered language said that the FBI is offering up to $25 million reward if you help capture one of these jihadis. So if Nordstrom had put up an ad that says 25% off any one of these dresses, and then you walk into Nordstrom, and it turns out it's only one of them, as a customer you would be misled. As a bus system we are not required under the First Amendment to accept that type of ad. And to answer the question that Your Honors were asking opposing counsel, King County, through its contractor Titan, did reach out to AFDI to ask if the further discussions were merited to help clear up those two misleading parts of the ad, the fact that they substantially overstated the amount of the award for capturing any one of the jihadis, and the fact that it was a State Department ad, not an FBI ad. And as the Court will notice from ER 37, AFDI said no need to discuss. We all know what comes next. They weren't interested in making the ad correct. They were interested in making what is a fairly extreme First Amendment point, that you should have open ads on buses or any other form limited or otherwise. Suppose they change their mind. Suppose they change their mind and they say, you know what, we don't agree with your concerns, but we're prepared to address them. And we're going to have the up-to language exactly the way it was with the State Department ad, and we're going to say State Department, not FBI. So we're going to absolutely address both of your concerns. Would your client accept that ad? My client in this situation gave three independent reasons for rejecting the ad, so the answer would be no. This is a hypothetical question not addressed to the record. The hypothetical is if they cured the concerns your client had, would they accept the ad? In this situation, there would still be two other problems with the ad. And they would be? We rejected it under our demeaning and disparaging prong for two reasons. It's demeaning to show a picture of someone the State Department has identified as a terrorist? Well, following this publication of the State Department ad, King County Metro did learn a few things, and we learned that from letters and other communications that were made with King County Metro explaining exactly that point, which is why this ad was demeaning and disparaging. You had a small number, a very small number of very dignified complaints, and they may be well taken, but it certainly wasn't necessarily disruptive, which I know is a different question, but they aren't also necessarily disparaging. I don't think that there is any requirement that an ad must be disruptive in order to prevent it from the bus system. CMAQ is an extreme factual circumstance, but it is not the only factual circumstance that justifies regulation of a limited public forum. What you're telling us, and I want to be clear about this, is that if AFDI had cured every single problem your client had with the text of this ad, it would still be refused? Not at all, Your Honor, and if I misspoke, I apologize. If they cleared up every single problem, including the demeaning and disparaging, we would have accepted the ad. How could they make it less demeaning and disparaging if State Department versus FBI is cured and the amount of the rewards per individual or whatever are cured? Well, to give you an example, it's the faces of global terrorism motif that was the problem with this ad. AFDI exacerbated that problem by adding the word jihadist in a very derogatory manner. From my hypothetical, I'm taking jihadist out. Okay. If you take jihadist out, I think you still have the problem that faces of global terrorism suggests that an individual who is of color is a problem. Now, I have not considered the hypothetical, Your Honor, of taking jihadist out. I think having jihadist in is an important part of the ad, and all of those things work together to demean persons of color. So, for example, in the Boston ad. What if you just said these individuals are wanted for terrorist ads? Most wanted ad, publish it in a heartbeat. Not a problem. The problem was this one tried to make a broader statement that demeaned and disparaged actual riders of Metro, minority passengers, and no business stays in business by demeaning and disparaging its customers. That's the bottom line. And absent that, as has happened throughout the country, both with AFTI and with others, forums have been closed to political and public interest speech because bus companies in the Second Circuit, in the Third Circuit, in the D.C. Circuit, and in the Seventh Circuit have been denied the ability to reasonably regulate ads. The courts have applied a designated public forum standard, even in that circumstance. They have required too tight a fit between the interests of running the bus system and the speech that was being regulated. Well, CMAQ gets us past that initial hurdle. In this case, we're bound to follow its general discussion as to what kind of forum it is. Yes. Okay. Yes, I agree with that, and CMAQ is rightly decided both because it follows Cogswell and because it follows the Forbes decision in that more speech, not less speech, guiding principle. Suppose I... Counsel, go ahead. Go ahead, Judge Gould. You go right ahead. Well, I just wanted you to elaborate on one part of your argument. That is, what is it specifically that your client thinks is either misleading or disruptive or demeaning about the word jihadist being in the ad? Well, jihadist is a general term, and as the district court in Boston decided before our case, and I think as Judge Jones also explained, jihad can more generally refer to a sacred religious duty of essentially trying to do your best and find enlightenment. In Boston... But can't it also refer to taking up arms against enemies in a holy war? And if that's correct, if that's one of the meanings, and we're dealing with free speech issues here, then explain how that can be viewed as misleading. I would say that in that circumstance, what would need to happen is reference to a violent jihadist, a jihadist seeking war. In the Boston ad that AFDI submitted, which is documented in the district court decision, that ad was initially rejected when it simply said jihadist, when it painted all Muslims with a broad brush. AFDI then came back with another ad and inserted the word violent jihadist, which the Boston MBTA then accepted. That's another way to cure the demeaning and disparaging issue here, is to be clear about the language that you're using. Violent jihadist versus painting everyone with a broad brush. Suppose I wanted to take out an ad on the side of your bus that said, global warming is a hoax. Would you accept it? We would. In situations like that, we have asked for clarification. I present you with a book that shows that 999 of 1,000 Nobel laureates say it's a problem, but there are one or two out there that say that it is. In other words, I'm looking at something that is not demonstrably false, but there's a dispute of opinion about it. I don't believe that that would run afoul of any of the provisions. Or an ad that said, same-sex marriage harms children. Would you accept that? I think in that situation, the client would be looking at the question of whether that demeans individuals who are involved in same-sex marriage. I don't think you can demean the planet by claiming it's a hoax, but you can demean individuals who are engaged in same-sex marriage. And then shows faces of people of color, as distinct from these individuals are wanted for terrorist acts, which is true and also not demeaning. Absolutely, Your Honor. And that's, AFDA has many forms open to it. If it wants to draw a colorful motif on faces of global terrorism, it can buy billboards, it can do lots of different things. But if it wants to advertise on the buses, it can present its viewpoint. It just simply cannot do so in a way that is demeaning and disparaging. And that same type of restriction applies to anybody who wants to advertise on any type of Middle Eastern or terrorist-type subject. We have accepted arguments on all sides. We have accepted ads on all sides of the Middle Eastern debates. In this case, the Court has the opportunity to go beyond the extreme facts of CMAQ to clarify that when a bus company, like Metro, looks at ads that are on its buses, it can regulate those ads in a way that is reasonable and in a way that is conducive to its proprietary and captive audience interests. In that situation, the bus companies are allowed to and are able to keep more speech on the buses, not less speech. A rule that is overly narrow, that overly scrutinizes the decisions of bus companies in this regard, will simply result in closures of the forums, as has happened elsewhere, because going to court quickly overcomes the revenues, and it is in the interests of the First Amendment to keep those forums open. Did the district court rely upon the disparaging factor? I believe so, yes. The district court did have a discussion on jihadist and those issues, and in CMAQ this court decided that really as long as the ad is properly rejected under any prong of the advertising policy, then it should be rejected and basically the bus company's decision should be upheld. Counsel, what's your view on the damages issues and irreparable harm issues that relate to whether there should be mandatory injunction? I believe that in the context of a limited public forum, Your Honor, that the court needs to look at those damages and irreparable harm issues in light of the First Amendment interests that exist in a limited public forum, particularly when you are dealing with a captive audience and when you are dealing with the proprietary interests of the bus system. It is important not to simply assume that AFDI has been harmed, but to have AFDI prove that it has been harmed. AFDI has not done that. This record is silent on that. In fact, the only part of this record that is there is Metro's representation that its proprietary business model would be harmed by inclusion of these advertisements. So for those reasons, we'd ask the Court to affirm. Thank you, Counsel. You have a little bit of rebuttal time remaining. Thank you. And I do think, and as we mentioned in our supplemental brief, in light of the change in the policy in 2012 that this Court can reconsider the forum issue. They shut down the forum to all the closed-off, all those Arab-Israeli the, excuse me, the Israeli-Palestinian advertisements, and they shut down all public-issue speech. But then in 2012, they reopened it. They specifically intended it to allow for public-issue speech, controversial advertisements, including advertisements on the Israeli-Palestinian conflict, including advertisements on terrorism. So I don't think it's necessarily foreclosed. And I do have grave, I think there's greater First Amendment concerns that if you're going to open up a forum to public-issue and political speech like they're doing here, to give the government broader censorship powers, which is essentially what they're asking for. Oh, we're going to allow a lot more speech, but give us the ability to say who's the one that's going to speak and who's not going to speak. And that goes to this point about, like, the faces of global terrorism. If it said faces of freedom fighters, is that demeaning or disparaging to somebody? Those individuals listed on that advertisement, my client's advertisements, are listed on the FBI's most wanted global terrorist list. Those are their faces in the wanted poster. And the fact that my client, and at the end of the day, the point my client is trying to make is not the Rewards for Justice Program. It's making a point that, look, you had the State Department pull this thing for political correctness, and we're making a point that, look, these are jihadists that are a danger to us, and we're going to call them jihadists, but the government says, no, you've got to call them freedom fighters or you've got to call them terrorists. That is inherently viewpoint-based, and it's prohibited regardless of the forum. Thank you. Thank you, counsel. The case just argued is submitted, and we appreciate the useful and helpful arguments from both counsel in this very challenging case. So we are now adjourned.
judges: Hawkins, Graber, Gould